# Commonwealth v. The Philadelphia Coca-Cola Bottling Co.

*Philip S. Moyer*, Deputy Attorney General, for plaintiff.
*Clark, McCarthy & Wagner*, for defendant.

HARGEST, P. J., July 7, 1930.—This case comes before us upon an appeal by the defendant, a corporation of the State of Delaware, doing business in Pennsylvania, from the settlement for tax on capital stock amounting to $429.68, made by the Auditor General and approved by the State Treasurer April 25, 1929. The defendant contends that it is entitled to an exemption on the ground that its busines of bottling a drink called "Coca-Cola" is manufacturing.

The case was submitted to the court June 18, 1929, under a stipulation to dispense with a trial by jury, but the last of the briefs was not filed until April 18, 1930.

*Facts.*

The facts have been agreed upon by a stipulation filed and it is not necessary to repeat them.

The process used by the defendant is, briefly, as follows: Coca-cola syrup is purchased in barrels from another corporation which manufactures it. This syrup is then filtered and used in combination with pure filtered water taken from the city mains and carbon dioxide gas is added. The water is cooled to a temperature of 35 degrees so as to absorb the gas more readily. Carbon dioxide gas is purchased in metal drums, and the water is impregnated with the gas by machinery. The bottles are washed and the filling and

capping is done by machinery. Each unit of washing, filling and capping is operated independently at an average capacity of approximately 108 bottles per minute. The process in mixing coca-cola syrup and carbonated water, such as is done at a soda fountain for immediate consumption, could not be used in a practical way to obtain the standard coca-cola beverage desired by the defendant because the beverage made at a soda fountain would tend to effervesce and liberate too much carbon dioxide gas before it could be bottled satisfactorily. At the soda fountain the operator uses the same coca-cola syrup, pours out the desired amount into a glass and then pours into the glass carbonated water similar to that used by the defendant company, obtaining a beverage substantially the same in taste, color, character and substance as that bottled by the defendant, the difference being that the coca-cola beverage at the fountain is for immediate use, while that bottled by the defendant is for future consumption.

### Discussion.

The defendant is incorporated "to manufacture, buy, sell and deal in carbonated waters, syrups and beverages of all kinds, and particularly to bottle and deal in liquids of all kinds for use as beverages and to conduct a general bottling business."

The Act of July 22, 1913, P. L. 903, amending section twenty-one of the Act of June 1, 1889, P. L. 420, exempts from taxation only so much of the capital stock of a corporation "as may be invested in any property or business not strictly incident or appurtenant to its . . . manufacturing business . . . it being the object of this proviso to relieve from State taxation only so much of the capital stock as is invested purely in the . . . manufacturing plant and business."

There is nothing to be predicated upon the fact that the charter of this corporation gives it the right "to manufacture" carbonated waters, syrups and beverages. It also gives it the right "to bottle and deal" in them. It is not so much what the charter says as what the corporation actually does that controls: Com. v. Wark Co., 32 Dauph. Co. 286, 293; Com. v. Dyer Quarry Co., 250 Pa. 589; Com. v. Filbert Paving Co., 229 Pa. 231.

We must approach the consideration of this question having in mind the well-settled principles that "language which relieves from taxation is to be strictly construed," and "where the taxpayer or his property is within the general language of the statute imposing the tax, all exempting provisions are to be strictly construed against the claim for exemption:" Com. v. Sunbeam Water Co., 284 Pa. 180, 183; Com. v. Lack. I. & C. Co., 129 Pa. 346, 356; Callery's Appeal, 272 Pa. 255, 272; Com. v. Wark Co., supra.

In the case of Com. v. Wark Co., 301 Pa. 150, the Supreme Court, sustaining this court, held that constructing buildings was not manufacturing. Mr. Justice Walling said:

"Courts are not prone to indulge in or to accept unusual or strained or unauthorized interpretations of the terms of a law; and anyone would experience considerable difficulty in adopting, in writing or speech, an unusual meaning of a word long in common and ordinary use, and which use neither the people nor the courts nor legislative bodies have at any time disregarded or changed. . . . It is not within the province of a court of law to recognize affirmatively and adopt judicially a new and unusual limitation, extension or modification of the meaning of a word in a statute which is of common usage, inwrought for centuries into our language, to apply it to a matter or situation where neither custom, common sense nor necessity requires or authorizes such application."

The appellant, notwithstanding the use of scientific methods and complicated machinery, pours a manufactured article, namely, coca-cola syrup, into a bottle and also pours carbonated water into the bottle, upon which it then puts an air-tight cap, by the use of machinery. Has it then done anything except bottle the substance? Does not the word "bottle" fit the process? Is it not the common ordinary word which explains the process? To speak of it as "manufacturing" gives an unusual meaning to this word which, in the language of Mr. Justice Walling, "neither custom, common sense nor necessity requires" to be given to that process.

In Com. v. Glendora Products Co., 297 Pa. 305, and Com. v. Lowry-Rodgers Co., 279 Pa. 361, it was held that roasting coffee is not manufacturing so as to exempt it from taxation, notwithstanding there is a change in color and chemical composition, a decrease in moisture and an enlargement in size of the product. In Com. v. Sunbeam Water Co., 284 Pa. 180, it is held that distilling water which takes out the impurities by boiling it to the point where it becomes steam and then cooling it back to water and which involves complicated machinery in the process, is not manufacturing.

The use of expensive and complicated machinery is not a determining factor: Com. v. Sunbeam Water Co., supra; Com. v. Glendora Products Co., supra.

The defendant contends that it takes a material not fit for use, to wit, coca-cola syrup, and produces a product that is. But this was also done in Com. v. Dyer Quarry Co., 250 Pa. 589. Nor does the addition of the chemical, carbon dioxide gas, determine that the process is manufacturing.

In Com. v. Weiland Packing Co., 292 Pa. 447, it is held that pickling of meat, smoking of hams and bacon is not manufacturing. In this case chemicals were applied to the product.

Citations might be extended, but applying the principles of these cases the conclusion is clear that the defendant's process is not manufacturing in the ordinary sense of that term in which the legislature used it. The coca-cola syrup was manufactured; the defendant did little more than dilute the coca-cola syrup with water, to which carbon dioxide gas was added. It neither manufactured the syrup nor the carbon dioxide gas. It mingled those two manufactured products and added water to them; then preserved the product by having it sealed in bottles. If this process is manufacturing, then the clerk at every soda fountain which produces the same product is engaged in manufacturing every time he draws a drink for a customer. No such use of the word was intended by the legislature.

For these reasons we conclude that the Commonwealth is entitled to recover:

| | |
|---|---|
| Amount of settlement | $429.68 |
| Interest from June 24, 1929, being 60 days after date of settlement | 26.71 |
| | $456.39 |
| Attorney General's commission, 5% | 22.82 |
| Total | $479.21 |

Now, July 7, 1930, judgment is hereby directed to be entered in favor of the Commonwealth and against the defendant, The Philadelphia Coca-Cola Bottling Company, for $479.21, unless exceptions be filed within the time limited by law.

From Homer L. Kreider, Harrisburg, Pa.