## Commonwealth, Appellant, v. Snyder's Bakery.

Argued December 2, 1943. Before MAXEY, C. J., DREW, LINN, STERN, PATTERSON and STEARNE, JJ.

E. Russell Shockley, with him Edwin M. Buchen and James H. Duff, Attorney General, for appellant.

Horace G. Ports, of Fisher, Ports & May, for appellee.

OPINION BY MR. JUSTICE PATTERSON, January 3, 1944: This appeal, by the Commonwealth, is for the purpose of determining whether the appellee, in preparing potato chips, is engaged in manufacturing, within the provisions of the Act exempting manufacturers from the mercantile license tax.[1]

The Act of July 10, 1941, P. L. 358, provides ". . . the provisions of this section shall not apply to the tax-

---

[1] Act of May 2, 1899, P. L. 184, as finally amended by the Act of July 10, 1941, P. L. 358, 72 P.S. sec. 2622.

ation for mercantile license purposes of (a) manufacturers or mechanics vending goods of their manufacture from their factories or workshops . . ." Appellee has a plant equipped with machinery for making potato chips. Only a particular type of potato adaptable for this particular product is used. Potatoes are stored over a long period of time at a constant temperature between 40 and 50 degrees during which time a chemical change takes place, the starch content being changed to a sugar content. The temperature is then increased to 60 or 70 degrees, during which time tests are made to determine the proper relationship between the starch and sugar content. When the proper relationship has been reached the potatoes are prepared for making chips. After passing through various processes, during which the potatoes are cleaned, sliced and washed, they are dried thoroughly and delivered to a chipping or frying machine. They first come in contact with a temperature of 450 to 475 degrees and leave the machine at a temperature of 300 to 325 degrees. This machine contains hot fat and vegetable oils through which the chips are passed. They are then conveyed through an oven which drains off the fat and dries them. After further drying they pass through an automatic salting machine and are conveyed to an automatic packing machine from which the chips emerge packed and ready for shipment.

This Court, in *Commonwealth v. Weiland Packing Company*, 292 Pa. 447, 450, said: ". . . the process of manufacture brings about the production of some new article by the application of skill and labor to the original substance or material out of which such new product emerges. If however there is merely a superficial change in the original materials or substances and no substantial and well signalized transformation in form, qualities and adaptability in use, quite different from the originals, it cannot properly and with reason be held that a new article or object has emerged,—a new production has been created." See *Norris Brothers v. The Common-*

*wealth,* 27 Pa. 494, 496. In the very recent case of *Commonwealth v. Peerless Paper Specialty, Inc.,* 344 Pa. 283, 285, we said: "The basic principle is that a new product is made out of existing materials." The company was held to be engaged in manufacturing within the meaning of this act when it converted paper and glue into sealing tape, producing a new and different article with totally different uses. ·

Potato chips are a prepared food adapted to an entirely different use from the raw potato and vegetable oil and salt of which it is a product. The form and content of the finished product are entirely different. This is not a case where there has been a mere chemical change in the article itself. Cf. *Commonwealth v. Weiland Packing Company,* supra. In *Commonwealth v. Lowry-Rodgers Company,* 279 Pa. 361, 367-68, we held that roasting of coffee beans is not a manufacturing process, and said: ". . . having regard . . . to the purpose of the exemption . . . it does not cover the case of merely cleaning and effecting a chemical change in a natural product, however skilful and beneficial the process and its result may be, even though there also occurs an incidental change in the size, form and weight of that product." We are of opinion that the court below properly concluded that "labor and skill are applied to the raw potato and it is changed into a new, different and useful article. While the potato chip is still basically a potato product, yet it has no resemblance to a raw potato, either in appearance or texture, and it is useful in that it is ready for instant consumption without any further preparation. Chemically, too, there has been a complete change . . ." Appellee is engaged in manufacturing within the meaning of the exemption provided in the Act.

The decree of the court below is affirmed. Costs to be paid by the Commonwealth.